UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CASE NO.

ULTIMO GLOBAL HOLDINGS, LLC and
P. NATHAN THORNBERRY

    Plaintiff,
vs.

RC-1, INC, JOHN PARKER,
MICHAEL MOE

    Defendants

_____

## COMPLAINT FOR BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, AND STATUTORY DISSOLUTION

Plaintiff, Ultimo Global Holdings, LLC ("Ultimo") and P. Nathan Thornberry ("Thornberry") by and through their undersigned counsel, hereby sues RC-1, Inc.d/b/a Hi Solutions ("RC-1"), John Parker ("Parker") and Michael Moe ("Moe")  and states as follows:

## JURISDICTION

1. Venue is proper in this District since the Defendant RC-1 has its primary office based in the Eastern District of Pennsylvania. The jurisdiction of this Court is invoked pursuant to 28 U.S. Code § 1332 as there is diversity jurisdiction in this matter as the parties are all residents of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees. Venue is proper under the Act, 28 USC 1391(b) and 42 USC 2000e because the acts complained of occurred within the judicial district and because corporate Defendant has its principal place of business within this district, resides in the judicial district and pursuant to venue selection provisions in the contracts between the parties.

2. Ultimo Global Holdings, LLC is an LLC doing business in Broward County, Florida. Thornberry is a resident of the State of Florida. Ultimo, is a Delaware Limited Liability Company which is owned by Thornberry Group, LLC, a Delaware Limited Liability Company. The member of Thornberry Group, LLC is Philip Nathan Thornberry who is a Citizen of Florida. The nerve center of Ultimo and Thornberry Group, LLC is in Florida where Philip Nathan Thornberry is a citizen.

3. All conditions precedent to the bringing of this action have been performed, waived or excused.

4. The Plaintiffs have retained the undersigned law firm and have agreed to pay reasonable fees and court costs in the bringing of this action

## COUNT I- BREACH OF SETTLEMENT AGREEMENT (as to RC-1)

5. The parties, Ultimo, Thornberry, and RC-1 entered into a Confidential Settlement Agreement ("The Agreement") on May 14, 2025, for the purpose of settling pending litigation matters including those previously pending in this Court in the case styled Ultimo v. RC-1, United States District Court for the Eastern District of Pennsylvania case No: 2:25-cv-00447-TJS (the "Underlying Lawsuit"). Litigation ensued after Ultimo purchased $1 million of Unsecured Convertible Promissory Notes issued by RC-1 and RC-1 failed to pay the Notes at maturity on March 31, 2023. RC-1 expressly advised that it was unable to repay the debt, leaving Ultimo with no practical alternative but to accept shares pursuant to the Agreement.

6. Under Section 2.3 of the Agreement, which outlines the Equity Transfer Schedule, RC-1, on the Effective date of May 14, 2025, was to issue five million shares of voting common stock ("Shares") in RC-1 to Ultimo. Moreover, an additional two and a half million

shares were to be set aside for issuance to Ultimo on May 14, 2028, if RC-1 fails to complete its initial public offering upon this date.

7. In accordance with Section 2.7 of the Agreement, which governs Audit Rights, RC-1 was to complete a Public Company Accounting Oversight Board ("PCAOB") Level Audit Report and provide such report to Ultimo by November 30, 2025, and failure to provide such report mandates RC-1 to provide Ultimo with full access to their financial systems.

8. As set forth in Section 2.6 of the Agreement, which governs Breach, the following is stated:

   **2.6 (a). Equity Transfer Breach**. If any equity transfer required under Section 2.3 is not completed in full or on time (a "Non-Payment Breach"), the RC-1 Parties are responsible for all costs incurred by the Ultimo Parties to collect the payment, including attorneys' fees and other collection expenses. Additionally, the Ultimo Parties' audit rights under the Agreement are immediately triggered and may be exercised.

   **2.6 (b). All Other Instances of Breach**. For any other type of breach not covered in 2.6(a), the non-breaching Party must provide written notice to the breaching Party, specifying the alleged breach and suggesting a way to cure it without penalty. The breaching Party then has 15 calendar days to respond and either cure or refuse. If the parties cannot resolve the issue, they must attempt mediation within 15 days of the end of the cure period. If mediation fails, the non-breaching Party may file a lawsuit within 30 days or waive the claim. If the court finds a breach occurred, the non-breaching Party is entitled to attorneys' fees and any other remedies available by law or equity.

9. RC-1 has engaged in a consistent pattern of violations of the Agreement, beginning with a breach of Section 2.6 (a). Shares were not issued to Ultimo in accordance with Section 2.3 of the Agreement, as they were not delivered to Ultimo by the Effective Date. Ultimo had to actively reach out to RC-1 past the Effective Date to receive the shares, as they continuously ignored the deadline. (See attached Exhibit 1 containing email correspondence).

10. Furthermore, RC-1 is in breach of Section 2.7 of the Agreement. On December 1, 2025, a demand letter (See Attached Exhibit 2) was submitted to RC-1 representatives detailing a breach of Section 2.7 of the Agreement, as RC-1 failed to provide a Public Company Accounting Oversight Board Level Audit Report to Ultimo by November 30, 2025. The demand letter highlighted the breach and provided for a method of curing it if RC-1 provided Ultimo with full access to its financial systems no later than December 2, 2025, by 12:00 pm EST. In response to the letter, RC-1 failed to provide sufficient access to its financial systems and has refused to participate in mediation, which is a condition precedent included in Section 2.6(b) of the Agreement. The email thread included below demonstrates Ultimo's commitment to abide by the notice requirement of 2.6 (b) of the Agreement and RC-1's refusal to cooperate, requiring Ultimo to seek Court involvement.



11. As referenced in the second email included below, RC-1 CEO, John Parker, was contacted by a representative of Plaintiff to assist in resolving this matter. The correspondence included questions regarding the status of the PCAOB report, financial

system usage, requests concerning companies pending acquisition, and a general ledger breakdown by affiliate or subsidiary. However, RC-1 has refused to provide a response to the communication.



12. Based upon the breach of the Agreement, Ultimo, seeks all amounts due under the Promissory Notes from the Underlying lawsuit and to be placed in a Director position with RC-1 as provided by the prior Subscription Agreement.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against RC-1 for all damages, any equitable relief, costs incurred to collect payment including attorneys' fees and other collection expenses, for RC-1 to provide login information for all financial systems to Ultimo, and further relief this Court deems just and proper under the circumstances.

**COUNT II- BREACH OF FIDUCIARY DUTY (as to Parker and Moe)**

Plaintiff reallages and reavers the allegations of paragraphs 1 through 12 as if set forth fully herein and further alleges as follows:

13. Under Pennsylvania law, directors of a domestic corporation owe fiduciary duties to the corporation and must act in good faith, in a manner they reasonably believe to be in the best interests of the corporation, and with the care of a reasonably prudent person under similar circumstances. See 15 Pa. C.S. § 1712(a).

14. Denial of notice of shareholder meetings impairs corporate governance and transparency and is contrary to the best interests of the corporation.  Moe and Parker have also taken improper distributions, contrary to the interests of RC-1 and its members such as Plaintiffs.

15.  Plaintiff has not received notice of any shareholder meetings conducted by RC-1, thereby depriving them of material corporate governance information and impairing their ability to protect their substantial seven-figure investment.

16.  According to Section 4.14 of the Settlement Agreement, regarding Terminated Agreements, the following is stated, "The Parties agree that RC-1 Agreements and the MDA Agreements are terminated as of the Effective Date unless there is an Equity Transfer Breach or a breach to the Audit Rights awarded to the Ultimo Parties hereunder."

17. Pursuant to the Subscription Agreement between RC-1 and Ultimo dated January 27, 2022, Ultimo received the right to designate an officer to serve on the RC-1's Board of Directors. Moreover, as a direct and proximate result of the actions of Parker and Moe, Plaintiff have suffered damages.

WHEREFORE, Plaintiffs respectfully request that this Court award compensatory damages, grant them the right to elect Nathan Thornberry to RC-1's Board of Directors and award any further relief the Court deems just and proper under the circumstances.

## COUNT III- STATUTORY DISSOLUTION (as to RC-1)

Plaintiff reallages and reavers the allegations of paragraphs 1 through 12 as if set forth fully herein and further alleges as follows:

18. Under 15 Pa.C.S. § 8871(a)(4), a court may dissolve a limited liability company when it is not reasonably practicable to continue operations consistent with governing agreements or where management acts are illegal, fraudulent, oppressive, or unfairly prejudicial.

19. RC-1's ongoing breaches of the Settlement Agreement, refusal to provide proper audit access, denial of shareholder governance rights, and mismanagement have rendered it not reasonably practicable to carry on affairs consistent with the best interests of the members/shareholders.

20. Plaintiffs are entitled to judicial supervision of the company's affairs, including winding up operations, collection of assets, and distribution of funds in a manner that protects their interests, pursuant to 15 Pa.C.S. § 8872, and request the Court to appoint a receiver or provisional director to oversee such winding up.

WHEREFORE, Plaintiffs respectfully request that this Court dissolve RC-1 pursuant to 15 Pa.C.S. § 8871(a)(4), appoint a receiver or provisional director to supervise the winding up of RC-1's operations, and further relief this Court deems just and proper under the circumstances.

## COUNT IV-SPECIFIC PERFORMANCE (as to RC-1)

Thornberry re-alleges and re-avers the allegations contained in paragraph 1 through 12 as if more fully set forth herein and further alleges as follows:

21. The Confidential Settlement Agreement and Release, dated May 14, 2025, required RC-1 to provide a complete Public Company Accounting Oversight Board level Audit Report

by November 30, 2025, which was not provided pursuant to Paragraph 2.7 of the Agreement. Alternatively, RC-1 was required to provide financial systems, general ledgers and other documents for a third party audit which were not provided. Paragraph 4.14 provides that the Promissory Notes between the parties and Subscription Agreement are terminated unless there are breaches of the audit rights under the Agreement. Ultimo contends that based upon RC-1's breaches of the Agreement, the prior Promissory Notes and Subscription Agreement are hereby reinstated.

22. Thornberry at all material times hereto has been ready willing and able to perform the Agreement, performed his required portion of the Agreement, but RC-1 refuses to comply with the Agreement.

23. Agreement, Thornberry does not have any remedies that would provide him with his Board seat and options, recover of Promissory Notes and audit rights.

24. Thornberry seeks specific performance of the Agreement including provision of his board seat and stock options, payment of all Promissory Notes and full audit rights.

WHEREFORE, Thornberry demands judgment against Defendant for specific performance of the Agreement, an award of attorneys' fees and costs for enforcement of the Agreement and further relief this Court deems just and proper under the circumstances.

## COUNT V-DECLARATORY RELIEF (as to RC-1)

Thornberry re-alleges and re-avers the allegations contained in paragraph 1 through 12 as if more fully set forth herein and further alleges as follows:

29. Thornberry contends that he is now entitled to recover all stock options, seek all audit rights and recover all relief provided under the prior Promissory Notes and Subscription Agreement between the parties.

30. There is a bona fide, actual and present need for declaratory between the parties.

31. Thornberry seeks a declaration concerning a present, ascertained or ascertainable state of facts and in particular a declaration of whether he is entitled to audit rights, plus recovery of his prior Promissory Notes and appointment as a Director or RC-1.

32. An immunity, power, privilege or right of Thornberry is dependent upon the facts or the law applicable to the facts.

33. Thornberry has, an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

34. The antagonistic and/or adverse interests are before this court by proper process.

35. The relief sought is not merely for giving of legal advice.

WHEREFORE, Thornberry demands declaratory judgment as to whether he is a member of the RC-1 Board of Directors, entitled to recover his Promissory Notes, entitled to all audit rights under the Agreement together with attorneys' fees, court costs, and for any and all other and further relief this Court deems just and proper under the circumstances

Demand for Jury Trial

Plaintiff hereby demands a trial by jury of all issues so triable.

Behren Law Firm
1930 N Commerce Parkway-Suite 4
Weston, FL 33326
(954) 636-3802 - phone
scott@behrenlaw.com

By:/Scott M. Behren/
　　Scott M. Behren
　　　　Fla Bar No. 987786

PRO HAC VICE

Alison D Rogers, Esq.
7154 N. University Drive
Suite 188
Tamarac FL 33321
(954) 399-2188
alison@rogerslawpractice.com