**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ULTIMO GLOBAL HOLDINGS, LLC and P. NATHAN THORNBERRY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **RC-1, INC., JOHN PARKER, and MICHAEL MOE** | : | **NO. 26-805** |

**MEMORANDUM OPINION**

**Savage, J.** **October 1, 2026**

In this action for breach of a settlement agreement, the plaintiffs move for entry of default judgment. The defendants counter by moving to set aside the defaults entered by the Clerk of Court. Because the defendants have meritorious defenses and the plaintiffs will not be prejudiced if the defaults are stricken, we will deny the motion for entry of default judgment and grant the motion to strike the defaults.

In May 2025, the parties settled an action brought by plaintiff Ultimo Global Holdings, LLC ("Ultimo"), and its sole member, P. Nathan Thornberry, arising from an investment in defendant RC-1, Inc. ("RC-1").[1] In this action, the plaintiffs claim RC-1 breached the settlement agreement.[2] They allege RC-1 did not timely issue shares to Ultimo pursuant to section 2.6(a) of the agreement and failed to provide a "Public

---

[1] The underlying action is *Ultimo Global Holdings, LLC and P. Nathan Thornberry v. RC-1, Inc.*, 25-cv-447. Plaintiffs initiated the case in Florida state court. It was removed to the United States District Court for the Southern District of Florida and then transferred to this Court. John Parker and Michael Moe were not parties.

[2] *See* Compl. ¶¶ 5–12, ECF No. 1. Plaintiffs did not attach a copy of the settlement agreement to the Complaint.

Company Accounting Oversight Board-level Audit Report" as required by section 2.7.[3] They add a cause of action—unrelated to the settlement—for breach of fiduciary duty against RC-1 executives John Parker and Michael Moe, claiming they mismanaged the company and have taken improper distributions.[4] They also seek statutory dissolution, appointment of a receiver, and declaratory relief against RC-1.[5]

Plaintiffs filed proofs of service of the summons and the complaint showing service on Parker, on March 1, 2026; Moe, on March 2, 2026; and RC-1, on March 3, 2026.[6] On April 1, 2026, after the defendants failed to respond, the Clerk of Court entered defaults pursuant to Federal Rule of Civil Procedure 55(a). A month later, the plaintiffs moved for a default judgment.

On June 16, 2026, we held a hearing to show cause why judgment should not be entered. Parker, an attorney, represented himself and RC-1. Moe did not appear. Parker argued that RC-1 complied with the agreement. He insisted the plaintiffs did not demonstrate they suffered damages. The plaintiffs claimed they were hampered in their ability to present evidence of damages because RC-1 failed to produce the financial data

---

[3] Compl. ¶ 9, ECF No. 1; Pls.' Br. Pursuant to the Court's June 29, 2026 Order [Dkt. No. 36] Ex. 1, ECF. No. 47-1 ("If any equity transfer is not made in full or when due in accordance with the Equity Transfer Schedule in Section 2.3 . . . the following occurs: (a) all of the Ultimo Parties' costs to collect the Settlement Payment in full, including attorneys' fees and other collection costs, shall be borne entirely by the RC-1 Parties, jointly and severally; (b) the audit rights provided to the Ultimo Parties hereunder are immediately invoked and made available to the Ultimo Parties."); Compl. ¶ 10, ECF No. 1; Pls.' Br. Pursuant to the Court's June 29, 2026 Order [Dkt. No. 36] Ex. 1, ECF. No. 47-1 ("The RC-1 Parties shall have until November 30, 2025 to complete a Public Company Accounting Oversight Board- (PCAOB)level [sic] Audit Report for RC-1 and provide that report . . . to the Ultimo Parties. . . .").

[4] Compl. ¶¶ 13–17, ECF No. 1.

[5] *See id.* ¶¶ 18–20, 29–35.

[6] Pls.' Mem. of L. in Opp'n to Defs.' Mot. to Strike Entry of Default [Pls.' Opp'n] at 4, ECF No. 57.

required by the agreement. We ordered the defendants to produce the financial data in accordance with the terms of the agreement.

At a second hearing on July 15, 2026, the defendants were represented by counsel. They moved to strike the default and raised defenses. They suggested that they did not respond to the complaint because they considered it part of Thornberry's ongoing harassment and threats. The defendants argued that despite the production of RC-1's financial data, the plaintiffs still cannot show they suffered damages. They further contended the plaintiffs have not articulated any basis for dissolution or the appointment of a receiver.

## Analysis

Defaults and default judgments are disfavored. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d. Cir. 2008) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)). Courts prefer that cases be decided on the merits. *See id.*

In determining whether to set aside a default under Federal Rule of Civil Procedure 55(c), we consider: (1) whether the defendants have a meritorious defense; (2) whether the plaintiffs will be prejudiced; and (3) whether the default was the result of defendants' culpable conduct. *Doe v. Hesketh*, 828 F.3d 159, 175 (3d Cir. 2016) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195).

### Meritorious Defense

Whether the defendants have a meritorious defense is a critical factor. *Id.* A meritorious defense exists where the defendants allege facts which, if established at trial, would be a defense of the action. *See Lee v. Gallina Mecca*, No. 22-2871, 2023 WL

5814783, at *2 (3d Cir. Sept. 8, 2023) (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

In their proposed Answer and Affirmative Defenses attached to their response to the plaintiffs' motion, the defendants contend they performed under the settlement agreement. They allege RC-1 completed the equity transfer required by section 2.2 of the agreement. The six-day delay in transferring the shares was the result of processing by the transfer agent, a delay beyond RC-1's control. The plaintiffs have not shown any loss of value because of the delay.[7] The defendants also allege they downloaded and delivered the financial data required by section 2.7 of the agreement.

The defendants have presented facts establishing defenses. Even if there was a delay in transferring the shares, plaintiffs have not suffered damages. Ultimo has the shares and financial data. With respect to the audit rights, the parties interpret section 2.7 differently. The plaintiffs believe they are entitled to the login credentials for RC-1's financial systems. The agreement does not provide live access to RC-1 financial systems so long as RC-1 can produce the financial data and documents called for by the agreement by other means. The defendants contend they did. The plaintiffs insist they did not. RC-1 has a defense against the breach of contract claim. If the allegations in the proposed Answer and Affirmative Defenses are proven, the defendants will show that the RC-1 stock was delivered to Ultimo and the financial data was also provided. If so, there was no breach of the agreement.

---

[7] Defs.' Suppl. Mem. of L. in Further Supp. of Their Mot. to Strike and Set Aside the Clerk's Entries of Default [Defs.' Mot. to Strike] at 5, ECF No. 56.

Additionally, the plaintiffs have no standing to bring an action for dissolution or the appointment of a receiver. Because RC-1 is a Nevada corporation, corporate governance issues are determined by Nevada law. To apply for appointment of a receiver or an injunction affecting the powers of a Nevada corporation, the shareholder must hold at least ten percent of issued stock. NV Rev. Stat § 78.650(1). Ultimo is a two-percent shareholder. Thus, as a two-percent shareholder, Ultimo cannot bring an action for dissolution or appointment of a receiver.

It is clear the defendants have a meritorious defense against Thornberry's claims. Thornberry does not own RC-1 stock. Ultimo does. Although he was a party to the settlement agreement, he has no standing to bring an action against Parker and Moe for mismanagement and breach of fiduciary duty because he is not a shareholder of RC-1.

Prejudice

The defendants argue that striking the defaults and allowing the case to proceed on the merits will not "deprive Plaintiffs of evidence, impair a witness, create a limitations problem, or frustrate collection of an existing final judgment."[8] They contend that their failure to respond to the complaint has amounted to no more than a litigation delay.

The plaintiffs counter that their "claims . . . depend upon access to RC-1's complete accounting systems, native financial data, general ledgers, bank records, and affiliate records," and the defendants "have withheld those materials for nearly a year" which has prevented them from being able to "trace corporate assets, determine the disposition of company funds, [and] verify the truth of RC-1's contractual representations . . . ."[9]

---

[8] Defs.' Mot. to Strike at 4.

[9] Pls.' Opp'n at 10–11.

At this stage, we must determine whether striking the entry of default will prejudice the plaintiffs. They have not demonstrated that they sustained damages or there is need to dissolve RC-1 or appoint a receiver. No evidence has been or will be lost. No witness will be unavailable for any reason caused by striking the defaults. In short, we cannot discern any prejudice plaintiffs will suffer if the defaults are stricken. Thus, the prejudice factor favors setting aside the entries of default.

Culpable Conduct

Defendants do not challenge the sufficiency of service of the complaint, summons, or other filings. Rather, they contend “Parker mistakenly viewed the February papers and related demands as another recurrence of the dispute rather than a deadline he intentionally chose to ignore.”[10] They offer no excuse for Moe.

Defendants have not offered an acceptable excuse for not responding to the summons and complaint. They have not disputed that their conduct was culpable. Nevertheless, the lack of prejudice and the defendants’ having meritorious defenses outweigh the defendants’ culpable conduct. Thus, we will deny plaintiffs’ motion for entry of default judgment and will grant the defendants’ motion to strike the entries of default.

[10] Defs.’ Mot. to Strike at 6.